

570 Broad Street / Suite 1201 / Newark, NJ 07102
973.623.3000 Main / 973.623.0858 Fax / litedepalma.com

Newark / Philadelphia

June 6, 2025

**VIA CM/ECF**
Office of the Clerk
U.S. Court of Appeals for the Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106-1790

      Re:   *Cornish-Adebiyi, et al. v. Caesars Entm't, Inc., et al.*,
              **Case No. 24-03006**

To Whom It May Concern:

Pursuant to FED. R. APP. P. 28(j), Plaintiffs/Appellants apprise the Court of a June 3, 2025 decision denying motions to dismiss price-fixing claims under Section One of the Sherman Act, 15 U.S.C. § 1, arising from use of a third-party pricing algorithm. *See In re MultiPlan Health Ins. Provider Litig.*, No. 24-cv-6795 (MFK), 2025 WL 1567835 (N.D. Ill. June 3, 2025).

The court held that plaintiffs plausibly alleged a *per se* illegal price-fixing scheme where: (1) defendants acted in parallel through their "shared use" of MultiPlan's "customizable" algorithm (even though the algorithm did not "compile[] competitively sensitive pricing data for use in its rate calculations," *id*. at *17, defendants did not adopt the algorithm "at the same time," *id.* at *14, and defendants could refuse to follow its "discretionary" rate "recommendations," *id*. at *15); (2) defendants acted against their individual self-interests in using MultiPlan given "the risk of losing subscribers" to those using "traditional . . . benchmarks" and in providing it "competitively sensitive information" they otherwise would keep "private," *id*. at *18; and (3) structural features, like high market concentration and entry barriers, existed to "facilitate" the scheme, *id*.

Office of the Clerk
U.S. Court of Appeals for the Third Circuit
June 6, 2025
Page 2

The court concluded: "When considering the plaintiffs' allegations as a whole, a plausible allegation of an agreement to fix prices comes into view"—*i.e.*, "third-party payors utilizing MultiPlan calculated their rates in a similar way, knowing others agreed to do the same, 'aligning' their prices with one another while collectively avoiding risk of subscriber loss." *Id.* at *18. "On this point," the court analogized to the "illustrative" scheme condemned in *United States v. Masonite Corp.*, 316 U.S. 265 (1942), in which competing distributors agreed "to fix prices through their 'express delegation' to Masonite." *Id.* at **18–19 & n.2 (discounting facts that "each distributor 'negotiated only with Masonite,' 'did not require as a condition of its acceptance that Masonite make such an agreement with any others, and had no discussion with any of the others,'" and that it was unclear when each distributor learned its own contract was "part of a larger arrangement" (quoting *Masonite*, 316 U.S. at 274–76)).

      Respectfully submitted,

      */s/ Joseph J. DePalma*

      *Joseph J. DePalma*

JJD:emp