SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST
NEW YORK, NY 10001
―――
TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

FIRM/AFFILIATE OFFICES
―――
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
―――
ABU DHABI
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
(212) 735-3834
EMAIL ADDRESS
BORIS.BERSHTEYN@SKADDEN.COM

February 17, 2026

Hon. Patricia S. Dodszuweit
Clerk of Court
U.S. Court of Appeals for the Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

      Re:    *Cornish-Adebiyi v. Caesars Entertainment*, No. 24-3006: Fed. R. App. P. 28(j) Plaintiffs-Appellants' Letter Submitting *Kentucky v. RealPage* as Supplemental Authority

Dear Ms. Dodszuweit,

*Kentucky v. RealPage* demonstrates the decision below should be affirmed because there are dispositive differences between the RealPage cases and both (i) the allegations here and (ii) this Circuit's precedent.

First, Plaintiffs-Appellants cannot satisfy *Kentucky* for the same reasons they cannot satisfy *In re RealPage, Inc., Rental Software Antitrust Litigation*, 709 F. Supp. 3d 478 (M.D. Tenn. 2023), because licensing Cendyn's software provides no basis to infer an agreement among Casino-Hotels. Plaintiffs-Appellants relied heavily on *RealPage*, and *Kentucky* analyzed the same software, holding that plaintiffs pleaded an agreement among landlords because, "[a]s stated by…*RealPage*, [landlords] increasing rent prices based on" RealPage's pricing recommendations is in landlords' "self-interest…only if [they] know they are receiving…the benefit of their competitors' data." *Kentucky* Op.14. While RealPage commingled landlords' confidential data, Plaintiffs-Appellants admit that the source their complaint relies on states that Cendyn's software recommends prices based on the subscriber's own data and competitor

data from "public" websites. A427. Otherwise, any "allegations that each Hotel Defendant provides [Cendyn] with confidential information and that [Cendyn] uses or pools that information in its algorithms are conclusory." *Dai v. SAS Institute Inc.*, 2025 WL 2078835, at *5 (N.D. Cal. July 18, 2025).

Moreover, while *Kentucky* plaintiffs alleged that landlords "agree that they will use [RealPage's] recommendations when giving quotes to potential renters," *Kentucky* Op.13, Plaintiffs-Appellants admit Casino-Hotels could reject every price Cendyn recommends. A252 ¶174. And all three courts—D. Nevada, Ninth Circuit, and the lower court here—that reviewed arguments equating Cendyn's software with RealPage's held these differences are fatal. *Gibson v. Cendyn*, 148 F.4th 1069, 1076-85 (9th Cir. 2025) (affirming dismissal because Cendyn's software does not "share any licensing hotel's confidential information among…licensees" or "restrain any [licensee's] ability to sell hotel rooms in accordance with their own judgment").

<u>Second</u>, Plaintiffs-Appellants cannot reconcile *Kentucky* with *In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300 (3d Cir. 2010). While *RealPage* and *Kentucky* inferred a conspiracy because landlords knew each other subscribed to RealPage and that RealPage spread confidential data, *Brokerage Antitrust* held those allegations "manifestly do not describe a horizontal conspiracy to unreasonably restrain trade." *Id*. at 329.

                              Respectfully submitted,

                              <u>/s/ Boris Bershteyn</u>
                              Boris Bershteyn
                              SKADDEN, ARPS, SLATE,
                               MEAGHER & FLOM LLP
                              *Attorney for Defendants-Appellees*
                              *Caesars Entertainment, Inc.,*
                              *Boardwalk Regency LLC,*

*Harrah's Atlantic City Operating Company, LLC, and Tropicana Atlantic City Corporation*

cc: Counsel of Record via CM/ECF